**Opinion filed September 26, 2013**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00353-CV

_____

## IN THE INTEREST OF G.C. AND J.C., CHILDREN

**On Appeal from the County Court at Law No. 2**
**Ector County, Texas**
**Trial Court Cause No. CC2-2991-PC**

### M E M O R A N D U M   O P I N I O N

This is an appeal from an order terminating the parental rights of the mother and father of G.C. and J.C.  Both parents filed a notice of appeal.  We affirm.

### I. *Issues*

In two issues on appeal, the children's father challenges the legal and factual sufficiency of the evidence to show best interest.  Though not designated as an "issue," the father also argues that the evidence is legally and factually insufficient to support the trial court's findings regarding endangering conditions, endangering conduct, and noncompliance with a court order.  The mother presents six issues.  In the first issue, she complains of the admission into evidence of the results of a drug

test.  In her second issue, the mother contends that the evidence is legally and factually insufficient to show that the Department of Family and Protective Services made reasonable efforts to return the children to the parents.  In the third, fourth, fifth, and sixth issues, the mother challenges the legal and factual sufficiency of the evidence to support the trial court's findings regarding best interest, endangering conditions, endangering conduct, and noncompliance with a court order.

## II. *Sufficiency Standards of Review*

The termination of parental rights must be supported by clear and convincing evidence.  TEX. FAM. CODE ANN. § 161.001 (West Supp. 2012).  To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true.  *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).  To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent.  *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002).  To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child.  FAM. § 161.001.

With respect to the best interest of a child, no unique set of factors need be proved.  *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied).  But courts may use the non-exhaustive *Holley* factors to shape their analysis.  *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).  These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to

2

the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

### III. *Analysis*

In this case, the trial court found that the parents had committed three of the acts listed in Section 161.001(1): those found in subsections (D), (E), and (O). Specifically, the trial court found that both parents had knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the physical or emotional well-being of the children; that the parents had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the physical or emotional well-being of the children; and that both parents had failed to comply with the provisions of a court order that specifically established the actions necessary for them to obtain the return of the children, who had been in the managing conservatorship of the Department for not less than nine months as a result of the children's removal from the parents for abuse or neglect. The trial court also found, pursuant to Section 161.001(2), that termination of each parent's parental rights would be in the best interest of the children.

#### A. *Evidence Introduced at Trial*

An investigator for the Department, Deanna Coffee, testified that, on September 10, 2010, she received a report alleging that G.C. and J.C. were

physically and medically neglected by their parents, who used drugs and even sold their food stamps for drugs. At that time, G.C. was eleven years old, and J.C. was four years old. Coffee interviewed G.C. at school that day, and the rest of the family during a home visit a few days later. The home was appropriate, and the parents denied any recent drug use. Coffee asked the four adults that lived there to submit to a drug test, which they did. The children's mother tested positive for cocaine and marihuana, and their father tested positive for cocaine. After receiving the results on September 20, the Department determined that supervised contact or outside placement was necessary. The female adult, who had tested negative for drugs, was permitted to act as the supervisor; however, the children's mother "kicked [the female] out of the home" on September 28. The parents then voluntarily placed the children outside the home, and the parents were subsequently evicted from their apartment.

After testing positive for drugs, the parents admitted that they had a history of using drugs and had just "slipped up." The mother said she had been clean for two years before her recent use. The mother also admitted that she began smoking marihuana when she was ten years old and that she had no plans of discontinuing because she needed marihuana to feel more relaxed and mellow and to escape from life. G.C. said his parents had told him that it was okay to do drugs. Evidence presented at the final trial showed that the parents continued to use drugs after the children were removed.

In addition to substance abuse by the parents, domestic violence also occurred. G.C. reported seeing his father beat his mother, which was acceptable behavior in their household. G.C. was frightened of his parents. The children's paternal grandmother also witnessed domestic violence between the parents. The father "didn't feel that [the domestic violence] was an issue" and became agitated when his mother confirmed that she had witnessed it.

4

At the time of the final trial, the parents had performed some of their required services. However, the Department's conservatorship worker, Michelle Franco, testified that neither parent had complied with the service plan by completing the required services. Also, both parents were still using illegal drugs, and they refused a hair follicle test a few days before the final trial.

Both G.C. and J.C. have special needs. G.C. has both cognitive and behavioral issues. G.C.'s counselor testified that G.C. suffered from a mood disorder, had a serious problem with aggression, and "lacked the brain functioning to be able to take what he learned one second and carry it over to another." G.C.'s mood disorder was diagnosed as having possible psychotic features, and testing showed that his level of intellectual functioning was "borderline." He was also diagnosed as having attention deficit hyperactivity disorder. Based upon G.C.'s physical limitations, the parents' history of substance abuse, and G.C.'s emotional issues, the licensed professional counselor concluded that G.C. may have been exposed to alcohol or drugs in utero.

J.C. has developmental and cognitive issues. At the time of removal, J.C. was still wearing a diaper and was obviously developmentally delayed. After removal, J.C. had to be hospitalized to have extensive dental surgery because his teeth were severely decayed. The foster parents have worked with J.C. and have made sure that J.C.'s special needs are met. At age five, J.C. was the size of a two-year-old and was cognitively similar to a two- or three-year-old. By the time of the final trial, J.C. had improved. According to the guardian ad litem, J.C. was blossoming because of his foster parents.

Before placing the children in foster care, two different voluntary placements were attempted; neither worked. No suitable relative placement was available for the children, and neither parent had a stable living environment at the time of the final hearing. However, J.C. was in a stable foster home, and his

special needs were being taken care of in that placement. G.C., because of his extremely aggressive and assaultive behaviors, was moved to a residential treatment center. According to Franco, G.C. has adjusted and is doing well there. G.C. stated that he likes it there.

During therapy, G.C. stated that he missed his brother; he did not state that he missed his parents. At times, G.C. has said that he wants to return home to his parents. At other times, G.C. has expressed a desire to stay in foster care. According to his counselor, G.C.'s "desires changed with his mood." J.C., on the other hand, has expressed no desire to live with his parents.

At the time of the final trial, the father was employed but lived with his mother, who would not allow the children or their mother to live in the house. The father testified that he had attended AA meetings as required but that he had not completed the substance abuse counseling. He admitted that he was still using drugs and that he "did, like, a 20 rock crack cocaine" the Sunday before trial. However, the father denied any use of methamphetamine even though he tested positive for methamphetamine three times during this case. The father insisted that he had learned to remain calmer, and he downplayed his previous comment—made after completing a parenting course—that he would want to "smack" G.C. for his behavior. The father testified that he had not made any living arrangements for the children and was not in a position to take them at the time of the final trial.

The Department's plan for both children is termination and unrelated adoption. According to Franco, J.C.'s foster parents would like to adopt him. The guardian ad litem testified that, even though G.C. may not be likely to get adopted, termination is in his best interest because he needs closure so he can move forward. A licensed professional counselor who treated G.C. testified that G.C. "absolutely does not need to return to his parents." The guardian ad litem expressed similar sentiments with regard to both G.C. and J.C. The paternal grandmother also stated

that "it's best that [the children] be in foster care and that they be adopted than for them to be back with their parents." Franco and the guardian ad litem testified that termination would be in both children's best interest and that it would not be in their best interest to continue to have any contact with the parents.

### B. *Acts of the Parents*

We hold that there was clear and convincing evidence from which the trial court could reasonably have formed a firm belief that both parents engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the physical or emotional well-being of the children. In addition to evidence of the parents' drug use, there was evidence of domestic violence between the parents. Such acts constituted conduct that endangered the children. To support termination under Section 161.001(1)(E), the offending conduct does not need to be directed at the child, nor does the child actually have to suffer an injury. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Domestic violence may constitute evidence of endangerment. *Id.*; *C.J.O.*, 325 S.W.3d at 265. Furthermore, the evidence was undisputed that the parents failed to comply with the provisions of a court order that specifically established the actions necessary for them to obtain the return of the children, who had been in the managing conservatorship of the Department for not less than nine months as a result of removal from the parents for abuse or neglect. The evidence is legally sufficient to support the trial court's finding as to each parent under Section 161.001(1)(E) and Section 161.001(1)(O). Because a finding that a parent committed one of the acts listed in Section 161.001(1)(A)–(T) is all that is required under that statute, we need not address the parents' remaining arguments, including the mother's fourth issue, regarding the sufficiency of the evidence to support the trial court's other findings under Section 161.001(1). *See* TEX. R. APP. P. 47.1. The mother's fifth and sixth issues are overruled.

*C. Best Interest*

We also hold that, based on the evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of both the father's and the mother's parental rights would be in the best interest of G.C. and J.C. *See Holley*, 544 S.W.2d at 371–72. We cannot hold that the findings as to best interest are not supported by clear and convincing evidence.

Upon considering the record as it relates to the desires of the children, the emotional and physical needs of the children now and in the future, the emotional and physical danger to the children now and in the future, the parental abilities of the parents, the parental abilities of J.C.'s foster parents, the ability of the residential treatment center to meet G.C.'s needs, the programs available to assist the foster parents and the treatment center, the plans for the children by the Department, the instability of the parents' home, the stability of the children's placement, acts and omissions indicating that the parent-child relationship was not a proper one, the acceptance of household domestic violence that G.C. mimicked, and the parents' continued drug use, we hold that the evidence is both legally and factually sufficient to support the findings that termination of the father's and the mother's parental rights is in the best interest of the children. *See id.* The mother's third issue is overruled. The father's issues on appeal are overruled.

IV. *Evidence of Initial Drug Test*

The mother argues in her first issue that the trial court abused its discretion in admitting evidence of the initial drug test that was conducted at the request of the Department. The mother asserts that the test was illegally requested and administered in violation of her constitutional rights. The mother, however, failed to preserve this issue for review because she did not object at trial to the admission of the complained-of evidence. *See* Tex. R. App. P. 33.1; *In re A.L.E.*, 279 S.W.3d

424, 431 (Tex. App.—Houston [14th Dist.] 2009, no pet.). The record shows that the mother lodged no objection when testimony was introduced regarding that drug test. The mother's first issue is overruled.

## V. *Reasonable Efforts*

In her second issue, the mother contends that the evidence is legally and factually insufficient to show that the Department made reasonable efforts to return the children to their parents. The mother's argument is misplaced. To terminate parental rights under subsections (D), (E), and (O), the Department is not required to prove that it made reasonable efforts to return the children. *See* FAM. § 161.001(1)(D), (E), (O); *see also In re A.R.*, No. 06-00-00156-CV, 2001 WL 1143208, at *5 (Tex. App.—Texarkana Sept. 28, 2001, no pet.) (not designated for publication); *Jones v. Dallas Cnty. Child Welfare Unit*, 761 S.W.2d 103, 109 (Tex. App.—Dallas 1988, writ denied). We note that such proof would have been required if the parents' rights had been terminated under subsection (N). *See* FAM. § 161.001(1)(N) (which specifically requires that reasonable efforts be made by the Department to return a child to a parent who has constructively abandoned the child). We also note that the record shows that the Department attempted to work with the parents to effect the return of the children. The mother's second issue is overruled.

## VI. *This Court's Ruling*

We affirm the trial court's order of termination.

MIKE WILLSON

September 26, 2013                                      JUSTICE

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.

9